**Konrad L. Trope**   (SBN: 133214)
TROPE LAW GROUP, P.C.
9100Wilshire Blvd., Suite 725E
Beverly Hills, California   90212
Phone:  (888) 942-9997
Fax:  (888) 942-9997
Email: ktrope@tropelawgroup.com

Attorneys for Plaintiff Fred Hall Shows, Inc., a
California Corporation

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRED HALL SHOWS, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>FREDERICK BARTLETT HALL, an individual; KATHERINE HALL, an individual; VIRGINIA HALL, an individual; TIMOTHY BAKER, an individual; GARY MICHAEL LUM, an individual; DAVID MANDAGIE, an individual; CHAD WOODS, an individual, and DOES 1 through 10, inclusive,<br><br>Defendants. | UNLIMITED CIVIL<br><br>Case No.   8:21-cv-417<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES RESULTING FROM**:<br>1.   Violation of *15 U.S.C. § 1125(a)*: Service Mark Counterfeiting and Infringement of Unregistered Service Mark with Acquired Secondary Meaning;<br>2.   Violation of *15 U.S.C. § 1125(a)*: False Designation of Origin/false Advertising;<br>3.   Violation of *15 U.S.C. § 1125 (A)*: False Endorsement;<br>4.   Violation of *15 U.S.C. § 1125(a)*: Trade Name Infringement;<br>5.   Violation of *15 U.S.C. § 1125(a)*: for Infringement of Trade Dress;<br>6.   Violation of *15 U.S.C. § 1125(a)*: Unfair Competition;<br>7.   Violation of *15 U.S.C. § 1125(a)*: Federal Service Mark Dilution;<br>8.   Violation of *California Business & Professions Code § 14330(a)*;<br>9.   Common Law Unfair Competition;<br>10. Common Law Trade Name Infringement;<br>11. Common Law Misappropriation;<br>12. Common Law Conversion;<br>13. Intentional Interference with Contractual Relations; |

14. Intentional Interference with Prospective Economic Advantage Between FHS and the Facilities;

15. Intentional Interference With Prospective Economic Advantage Between FHS and Exhibitors

16. Intentional Interference With Prospective Economic Advantage Between FHS and Show Customers

17. Unjust Enrichment and Imposition of Constructive Trust

18. Breach of Fiduciary Duty Against All Defendants;

19. Breach of Fiduciary Duty Against Defendant Gary Michael Lum;

20. Breach of Fiduciary Duty Against Defendant Frederick Bartlett Hall;

21. Breach of Contract Against Defendant Frederick Bartlett Hall;

22. Breach of Contract Against Defendant Gary Michael Lum;

23. Statutory Unfair Competition Under *California Business & Professions Code § 17200*;

24. Violation of *California Business & Professions Code § 17500;*

25. Violation of California Uniform Trade Secret Act: *Cal. Civ. Code § 3426.1 et seq.*;

26. Violation of Unfair Business Practices: *California Business & Professions Code § 17200-17301*

**DEMAND FOR JURY TRIAL**

**COMES NOW**, Plaintiff FRED HALL SHOWS, INC., a California corporation, presenting their complaint herein against Defendants, FREDERICK BARTLETT HALL, an individual; KATHERINE HALL, an individual; VIRGINIA HALL, an individual; TIMOTHY BAKER, an individual; GARY MICHAEL LUM, an individual, DAVID MANDAGIE, an individual; and CHAD WOODS, an individual, and demanding trial by jury, complains and alleges as follows:

## **JURISDICTION AND VENUE**

1.      This action is brought under the trademark laws of the United States,

COMPLAINT

1    and in particular *15 U.S.C. § 1125.*  Thus, federal question jurisdiction is proper

2    under *28 U.S.C. § 1138(a)* and *15 U.S.C. § 1125(a), (c)*.  Supplemental

3    jurisdiction of the related claims arising from the same nucleus of operative

4    facts giving rise to this dispute is proper under the provisions of *28 U.S.C. §*

5    *1367(a)*.

6         2.    Venue is proper in this federal judicial district, in that Frederick

7    Bartlett Hall, Katherine Hall, Virginia Hall, Timothy Baker, Gary Michael Lum,

8    David Mandagie, and Chad Woods, at all relevant times mentioned herein, have

9    their principle place of business in this judicial district on their own behalf and

10   through their agents, and the claims asserted herein arise, at least in part, in this

11   judicial district.

12        3.    Venue is proper in this federal judicial district in that Defendants

13   Frederick Bartlett Hall, Katherine Hall, Virginia Hall, Timothy Baker, Gary

14   Michael Lum, David Mandagie, and Chad Woods at all relevant times

15   mentioned herein, have their principal place of business in Ventura County,

16   which is within the jurisdiction of this federal judicial district, on their behalf

17   and through their agents, and the claims asserted herein arise, at least in part, in

18   Ventura County, which lies within this judicial district.

19                                    **THE PARTIES**

20        4.    Plaintiff FRED HALL SHOWS, INC. ("Plaintiff" or "FHS") is a

21   corporation duly organized and existing under the laws of the State of

22   California, and has its principal place of business in the State of California,

23   County of Orange.

24        5.    Plaintiff is informed and believes and thereon alleges that Defendant

25   FREDERICK BARTLETT HALL ("BH") at all time relevant hereto was and is

26   a resident of the County of Ventura, State of California.

27        6.    Plaintiff is informed and believes and thereon alleges that Defendant

28   KATHERINE HALL ("KH") at all times relevant hereto was and is a resident

COMPLAINT

of the County of Los Angeles, State of California.

7.     Plaintiff is informed and believes and thereon alleges that Defendant VIRGINIA HALL ("GH") at all times relevant hereto was and is a resident of the County of Ventura, State of California.

8.     Plaintiff is informed and believes and thereon alleges that Defendant TIMOTHY BAKER ("TB") at all times relevant hereto was and is a resident of the County of Riverside, State of California.

9.     Plaintiff is informed and believes and thereon alleges that Defendant GARY MICHAEL LUM ("ML") at all times relevant hereto was and is a resident of the County of Kern, State of California.

10.     Plaintiff is informed and believes and thereon alleges that Defendant DAVID MANDAGIE ("DM") at all times relevant hereto was and is a resident of County of San Diego, State of California.

11.     Plaintiff is informed and believes and thereon alleges that Defendant CHAD WOODS ("CW") at all times relevant hereto was and is a resident of the State of Nevada.

12.     Plaintiff FHS is informed and believes and believes, and thereon alleges, that at all times herein mentioned each of the Defendants is responsible in some manner for the occurrences herein alleged, and that FHS's injuries, as hereinafter alleged, were proximately caused by the act of such Defendants, and each of them.

13.     Plaintiff FHS is informed and believes and thereon alleges, that at all times mentioned, each of the Defendant was the agent and employee of each of the remaining Defendants and in so doing the things hereinafter alleged, was acting within the scope of such agency.

14.     The true names of Defendants Does 1 through 10, inclusive, are unknown to FHS and therefore the Defendants are sued herein under the foregoing names, which are fictitious, and upon ascertaining their true names,

COMPLAINT

1   leave will be asked to amend this complaint by inserting the same. FHS is
2   informed and believes that each of the fictitiously named Defendants is
3   responsible in some manner for the acts herein alleged and that FHS's injuries as
4   herein alleged were proximately caused by said Doe Defendants.

5   **FACTS COMMON TO ALL CLAIMS**

6       15.    For over seventy (70) years, the Fred Hall Shows have provided a
7   platform for the promotion of recreational boating, camping and fishing in
8   California.  These shows have provided a marketplace for recreational boating
9   manufacturers, camping and fishing equipment dealers and their representatives
10  to interact directly with the public in a beautiful, well regarded, consistent
11  locations.  Currently, for over 10 years, FHS has provided two shows annually,
12  with a show in Long Beach, California at the Long Beach Convention Center as
13  well as a show in Del Mar, California at the Del Mar Fairgrounds in San Diego,
14  California.

15      16.    The FHS shows are marketed as the leading exhibitions for catering
16  to the fishing, camping and recreational boating industry.  Moreover, the FHS
17  shows are considered very upscale in that over 36% of show attendees have
18  incomes of over $100,000, and over 30% of show attendees have incomes of
19  over $150,000.

20      17.    The FHS exhibitions pull in over 500,000 attendees, combined for
21  the two annual shows ("ANNUAL SHOWS").  The super-majority of attendees
22  are interested in fishing, camping and related activities.

23      18.    Up until October 16, 2014, the American Sporting Fishing
24  Association, a District of Columbia nonprofit corporation, owned the ANNUAL
25  SHOWS.  Then, on or about October 16, 2014, a newly formed corporation,
26  Fred Hall Shows, Inc., a California corporation, of which Duncan McIntosh is
27  the President and 70% shareholder, purchased all right and title to the assets of
28  FHS.  These assets included but were not limited to, tradenames, trademarks,

servicemarks, business names, including business goodwill and all other related intellectual property.  Part of the goodwill clearly involved the business contacts and long-standing annually renewed contracts between the owner of the shows and exhibitors and related vendors.

19.    At the time of the acquisition, Defendant BH was and still is the 30% shareholder of FHS.  Defendant ML was and until December 18, 2020, 2021 was the general manager of FHS.  Both Defendant BH and Defendant ML have had long-standing employment contracts with FHS.

20.    FHS is 70% owned by Duncan McIntosh, who serves as President and Chief Executive Officer.

21.    In addition, Defendant TB has served as an ongoing employee until January 24, 2021, along with Defendant KH, who has served as a full time employee until March 3, 2021, in the capacity of Operations Director.

22.    Owing to the pandemic, FHS only had one show in March 2020 at the Long Beach Convention Center.  However, the May 2020 show at the Del Mar Fairgrounds had to be cancelled.  Given the current Covid crisis, it is difficult, if not impossible, to ascertain when future shows could be planned.

23.    In addition, Defendants BH and ML, each signed employment agreements which also contained explicit nondisclosure covenants as well as ongoing explicit and implicit duties of loyalty and fidelity.  Attached hereto and incorporated herein as Exhibits "1" and "2," respectively, are the employment agreements for Defendants BH and ML.

24.    Furthermore, Defendant BH, as a shareholder of Plaintiff, executed a Shareholder Agreement on January 19, 2015.  Attached hereto and incorporated herein as Exhibit "3" is a true and correct copy of the Shareholder Agreement between Plaintiff FHS and Defendant BH.

25.    Within that Shareholder Agreement, Defendant BH has a fiduciary duty in which he is bound by covenant prohibiting him from being an "owner,

COMPLAINT

director, officer, employee, consultant or agent of or provide any services to, or refrain from carrying on any business similar, directly or indirectly, competitive to that conducted by the Corporation."  *See* Article 13 of Exhibit "3."

26.    Furthermore, Defendant BH signed an agreement with Plaintiff FHS on November 18, 2014 in which Defendant BH was bound by a duty of loyalty in terms of devoting his best efforts to the business of Plaintiff FHS, along with performing conscientiously "all duties and obligations required or assigned, not to usurp, for personal gain, any opportunities in the [FHS's] line of business." In addition, Defendant BH, pursuant to the Confidentiality and Nondisclosure Agreement has an ongoing obligation to protect the company's trade secrets and confidential information including, but not limited to, a prohibition on using those trade secrets during or after termination of his employment, along with a covenant not to solicit client, customers or employees of Plaintiff FHS. Attached hereto and incorporated herein as Exhibit "4" is a true and correct copy of the  Confidentiality and Nondisclosure Agreement between Plaintiff FHS and Defendant BH.

27.    Furthermore, even after the cessation of employment, these employees are expected to keep in strictest confidence and trust all confidential information ad are bound from knowingly using that information in any further activities.  Indeed, the Employee Handbook, at Page 20, makes specific reference to the *California Uniform Trade Secrets Act*, which is described more fully herein below, as well as *California Penal Code* § 499(c) which makes it a crime for the misappropriation of FHS trade secrets.

28.    Moreover, all of the Defendants, in their capacities as current or former employees of Plaintiff FHS, were bound by an employee handbook that was effective November 1, 2014.  Attached hereto and incorporated herein as Exhibit "5" is a true and correct copy of the Fred Hall Shows, Inc. Employee Handbook.

COMPLAINT

29.    Defendants KH and TB, as long-standing current employees, were also expected to have a duty of loyalty and fidelity.

30.    Indeed, things have been so difficult for FHS that despite receiving a PPP loan from the U.S. Small Business Administration, the company still had to reduce salaries and finally had to furlough various employees, including the above-named Defendants.

31.    Defendants, in various forms, have protested and objected to these economically imposed cuts and demanded they be not be furloughed or that their compensation be fully maintained.  However, Plaintiff FHS would ask the court to take a look at any headline and recognize the economic crisis that this country faces, any kind of public gathering has either been banned at the federal level or certainly at the state level.

32.    Indeed, as this Complaint is being written, California is in a full out lock down where even SeaWorld, Disneyland, Knotts Berry Farm and other events which involve public gatherings have been ordered to shut down. Indeed, even open air situations such as involving the NFL, which games are taking place, are in front of empty stadiums.  Therefore, it is not surprising that FHS, which take place in closed facilities (the Long Beach Convention Center and tented facilities at the Del Mar Fairgrounds, clearly cannot move forward. Thus, the shows are currently treading water.

33.    Part of the intellectual property acquired by Plaintiff FHS includes business name trademark and service marks for Fred Hall Shows, Fred Hall & Associates, The Ultimate Outdoor Experience, Fred Hall's Fishing, Tackle & Boat Show, Fred Hall Fishing, Boating & Outdoor Adventures, The Hall Shows, and California Fishing 101.

34.    In addition, the following web site and domain names are also registered to FHS: www.fred-hall.com; www.fred-hall.info.net, www.fred-hall.info.org; www.fredhall.com; www.fredhall.info.net; www.fredhall.info.org;

COMPLAINT

1    www.fredhallshow.com; www.fredhallshow.info.net; and

2    www.fredhallshow.info.org.

3        35.    Plaintiff is informed and believes and based thereon alleges that

4    Defendants BH, KH, VH, TB, ML, DM and CW have conspired to

5    misappropriate the goodwill and trademarks of Plaintiff FHS.  As part of that

6    conspiracy, Plaintiff is informed and believes and based thereon alleges that the

7    Defendants have agreed upon a common plan and thereby have also been

8    conspiring collectively and individually, along with other unknown Defendants,

9    to misappropriate the trade secrets of FHS, including but not limited to, pricing

10   information with the vendors and exhibitors as well as officials at the Long

11   Beach Convention Center as well as the Del Mar Fairgrounds.

12       36.    These same acts not only constitute misappropriation of trade

13   secrets, but tortious inference with contractual obligations.

14       37.    In particular, Defendants have conspired in writing whereby

15   Plaintiff is informed and believes and based on an email inadvertently

16   forwarded to Plaintiff containing the following from Defendant BH where he

17   openly admits that he is using his wife's personal email as a way to allegedly

18   hide his illegal scheme:

19           -----Original Message-----

20       From: "Ginny Hall" <ginnyhall88@icloud.com>
         Sent: Friday, December 18, 2020 10:39am
21       To:  "Mike  Lum"  <mike@fredhall.com>,  "Katie  Hall"
         <Katie@fredhall.com>,  "Tim  Baker"  <tim@fredhall.com>,
22       "Ginny Hall" <ginny@fredhall.com>
         Subject: New entity
23
         I'm writing this in Ginny's email for safety
24       I am working on putting together a new corporate entity with
         25% owned by an investor and the rest owned by Bart, Ginny,
25       Katie, Mike and Tim in equal shares.
         Of course I am going to try and get my money out of the Fred
26       Hall Shows, but I am more concerned with the shows and the
         people that make them great. If necessary, and this is the most
27       likely scenario, I will just have to walk away from the money I
         put into the shows.
28       I hope I can do this quickly and put a plan in front of everyone.

COMPLAINT

If we pull together we can probably make this work.

I have 3 choices. Ask him to sell it to us on an earn out. Not likely.

Have an investor make him an offer and we pay back the investor in an earn out. Possible. I may get my money back in those scenarios. But, if I have to, I'll just walk away and we get that 25% investor to give us enough to get us through to September when we should have enough cash reserves to be fine. At that point we all own 15% and the investor owns 25%. Mike would be corporate president. I'm doing the best I can. This is possible to work if we want it to. We won't own the name in the last scenario but we can still say things like "the Real Hall Family Show" or produced by the Hall Family.

We don't have a current contract with Long Beach for 2022 and Charlie said he would hold the traditional dates for us and we would have first choice. So, if we are in those dates and it's the Hall Family Show, I wouldn't care what anyone else would do, Fred Hall bane or not.

I hope this idea is appealing. I can't do it by myself.

Sent from my iPhone

38.    Since 2012, FHS has expended significant time, money, and effort to establish public recognition among individuals who come to the two ANNUAL SHOWS to possibly purchase boats, equipment, supplies, or services connected with power boating ("ATTENDEES"). The SERVICE MARKS and TRADE NAMES associated with the two ANNUAL SHOWS have become distinctive of FHS's services of producing the two ANNUAL SHOWS. The two ANNUAL SHOWS themselves have become distinctive of FHS's services to the "large boat buying public" such that the SERVICE MARKS and TRADE NAMES have acquired "secondary meaning" and the SERVICE MARKS and TRADE NAMES would be registrable with the United States Patent and Trademark Office under *15 U.S.C. § 1052(f)*.

39.    Since 2012, FHS has expended significant time, money, and effort to establish public recognition of the two ANNUAL SHOWS among boat manufacturers and providers of goods and services for boat owners. The SERVICE MARKS and TRADE NAMES associated with the two ANNUAL SHOWS have become distinctive among the exhibitors/providers of powerboats, equipment, supplies, and services related to powerboats

("EXHIBITORS"). The EXHIBITORS are a relevant class of consumers for FHS's services of producing the two ANNUAL SHOWS. The two ANNUAL SHOWS have become distinctive of FHS's services such that the SERVICE MARKS and TRADE NAMES have acquired "secondary meaning" and the SERVICEMARKS would be registrable with the United States Patent and Trademark Office under *15 U.S.C. § 1052(f)*.

40.    FHS has made continuous and exclusive use of the SERVICE MARKS and TRADE NAMES in its advertising and promotion of its services at the two ANNUAL SHOWS since 1973. As a result of these efforts, FHS has established substantial recognition of its SERVICE MARKS and TRADE NAMES; thus, among EXHIBITORS and ATTENDEES, the SERVICE MARKS and TRADE NAMES have become famous within the power boating industry and are valuable assets of FHS.

41.    Since 2014, FHS has expended significant time, money, and effort to establish public recognition among individuals who come to the two ANNUAL SHOWS.  These individuals attend to possibly purchase boats, fishing and camping equipment, supplies, or services connected with fishing, camping and power boating ATTENDEES.  The SERVICE MARKS and TRADE NAMES associated with the two ANNUAL SHOWS have become distinctive of FHS's services of producing the two ANNUAL SHOWS for ATTENDEES. The two ANNUAL SHOWS themselves have become distinctive of FHS's services to the "large boat buying public" such that the SERVICE MARKS and TRADE NAMES have acquired "secondary meaning;" moreover, the SERVICE MARKS and TRADE NAMES would be registrable with the United States Patent and Trademark Office under *15 U.S.C. § 1052(f)*. The two ANNUAL SHOWS themselves, including the total context of elements in which the two ANNUAL SHOWS are presented, have created a whole visual image presented to ATTENDEES and EXHIBITORS to constitute TRADE

DRESS. Thus, the two ANNUAL SHOWS after 30 years, especially the last six years, have developed as a type of identifying symbol of origin. FHS is and always has been the sole and exclusive owner of the TRADE DRESS since 2014.

42.    FHS has printed and distributed advertising and promotional informational material, since 2014, which are entirely its creation. The graphics and text were created entirely by FHS. As a result of these advertisements as well as the publicity generated therefrom, FHS has received and developed a reputation for the two ANNUAL SHOWS and has created substantial goodwill. The success of the two ANNUAL SHOWS has generated increasing income and earnings for FHS.  Income and earnings have increased as a result of the time and money invested in the advertising and promotion of the two ANNUAL SHOWS.  Further, the expenditure of significant time, money, and effort has confirmed the public's recognition of the SERVICE MARKS, TRADE NAMES, and TRADE DRESS of the two ANNUAL SHOWS as associated with the services of FHS.

43.    Defendants have clearly ignored the federal and state statutory provisions which provide for developing secondary meaning, notwithstanding that the SERVICE MARKS at issue may be geographically descriptive or even unregistered.

44.    A review of these files at the United States Patent and Trademark Office shows that these "geographically descriptive" service marks (or trademarks) all qualified for registration on the basis of *15 U.S.C. § 1052(f)*, whereby a trademark/service mark that is geographically descriptive can acquire "secondary meaning" and thereby become "distinctive" of the applicant's goods and services.

45.    All of FHS's SERVICE MARKS, TRADE NAMES, and TRADE DRESS have acquired secondary meaning and thus are "distinctive" and

entitled to protection under *15 U.S.C. § 1125(a), (c)* and *California Business & Professions Code §§ 14200 et. seq. 17200, 17500* after over 70 years of continuing use.

## **FIRST CLAIM FOR RELIEF**

(Violation of *15 U.S.C. § 1125(a)*: SERVICE MARK Counterfeiting and Infringement of Unregistered SERVICE MARKS with Acquired Secondary Meaning Against All Defendants)

46.    Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 45, inclusive, as though set forth in full herein.

47.    Defendants have used copies, and/or substantially and confusingly similar variations, of Plaintiff's SERVICE MARKS in interstate commerce without the consent of Plaintiff, for the purpose of selling counterfeit and infringing services.  Defendants, and each of them, have caused and continue to cause confusion, mistake, and deception in the minds of the public.

48.    Plaintiff's rights or the rights of predecessors in interest in the SERVICE MARKS and TRADEMARKS has been exclusive and continuous since at least as early as 1956, and reflects the purchase of all intellectual property rights for the SHOWS acquired and used for over 70 years.

49.    Plaintiff has expended enormous amounts of time, effort and money promoting its services and the two ANNUAL SHOWS through use of the SERVICE MARKS. The relevant consuming public has come to associate Plaintiff's SERVICE MARKS with Plaintiff or with Plaintiff's services of producing the two ANNUAL SHOWS, such that Plaintiff's unregistered SERVICE  MARKS have acquired "secondary meaning."

50.    By selling services using substantially and confusingly similar variations of the SERVICE MARKS or actual reproductions of the SERVICE MARKS, the Defendants have imitated, counterfeited, and infringed the

Plaintiff's SERVICE MARKS in interstate commerce and have violated the Lanham Act, *15 U.S.C. § l 125(a)*.

51.    By reason of the foregoing, Plaintiff has been injured in an amount not yet ascertained and are entitled to the remedies provided for in *15 U.S.C. § 1116, et seq*., including but not limited to treble damages, attorneys' fees and injunctive relief.

52.    Defendants, and each of them, in performing the conduct complained of herein, acted willfully and with intent to injure Plaintiff FHS. Defendants, and each of them, are therefore guilty of malice and oppression in conscious disregard of Plaintiff FHS' s rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct.

53.    Defendants threatened to, and unless restrained will, continue to engage in the wrongful and illegal acts described herein. As a result, Plaintiff will suffer great and irreparable injury, for which damages would not afford adequate relief, in that said damages would not adequately compensate for the injury to FHS's business reputation, goodwill, and  customer base, and Defendants' conduct, if allowed to continue, would inevitably result in the destruction of the two ANNUAL SHOWS.  Accordingly,  FHS seeks injunctive relief against all Defendants for their misconduct.

## SECOND CLAIM FOR RELIEF

(Violation of *15 U.S.C. § 1125(a)*: False Designation of Origin/False Advertising Against All Defendants)

54.    Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 53, inclusive, as though set forth in full herein.

55.    Defendants' use of deceptive and confusingly similar variations and copies of the SERVICE MARKS as described herein above is a use in interstate

COMPLAINT

commerce of words and/or symbols, a false designation of origin, and/or a false description or representation, and such is likely to cause confusion, to cause mistake, to deceive the public into the affiliation of Defendants with the two ANNUAL FHS SHOWS, or as to the origin, sponsorship, or approval of Defendants' event and the two ANNUAL FHS SHOWS. Such use has already misled and deceived, and will continue to mislead and deceive, the public into believing that the Defendants' counterfeit and infringing services originate with Plaintiff FHS, are licensed by FHS or the two ANNUAL SHOWS, or are in some way sanctioned by, or otherwise affiliated with, the services of FHS or the two ANNUAL SHOWS.

56.    Defendants' unauthorized association of the counterfeit and infringing services with Plaintiff FHS and/or the two ANNUAL SHOWS will cause such damage to the two ANNUAL SHOWS that FHS will be irreparably harmed.

57.    By so imitating, counterfeiting, and infringing the FHS SERVICE MARKS in interstate commerce, the Defendants have violated Section 43(a) of the Lanham Act, *15 U.S.C. § 1125(a)*.

58.    By reason of the foregoing, Plaintiff FHS has been irreparably harmed and will continue to be irreparably harmed.  Plaintiff is entitled to the remedies provided for in *15 U.S.C. § 1116 et seq*., including but not limited to damages, treble damages, injunctive relief, and attorney's fees.

59.    Defendants, and each of them, in performing the conduct complained of herein, acted willfully and with intent to cause injury to Plaintiff FHS.  Defendants, and each of them, are therefore guilty of malice and oppression in conscious disregard of Plaintiff FHS' s rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct.

60.    Defendants threatened to, and unless restrained will, continue to

1   engage in the wrongful and illegal acts described herein. As a result, Plaintiff

2   will suffer great and irreparable injury, for which damages would not afford

3   adequate relief, in that said damages would not adequately compensate for the

4   injury to FHS's business reputation, goodwill, and customer base, and

5   Defendants' conduct, if allowed to continue, would inevitably result in the

6   destruction of the two ANNUAL SHOWS. Accordingly. FHS seeks injunctive

7   relief against all Defendants' for their misconduct.

8   **THIRD CLAIM FOR RELIEF**

9   (False Endorsement Under Lanham Act, *15 U.S.C. § 1125(a)*

10   Against All Defendants)

11   61.   Plaintiff repeats, realleges and incorporates by reference the

12   allegations contained in paragraphs 1 through 60, inclusive, as though set forth

13   in full herein.

14   62.   As a result of the secondary meaning established for Plaintiff's

15   SERVICE MARKS and as a result of Plaintiff's creating and producing the two

16   ANNUAL SHOWS that has come to be recognized as an annual event ongoing

17   in the boating industry for over 70 years, the two ANNUAL SHOWS have

18   come to be recognized by the public as an event which takes place every year at

19   the Long Beach Convention Center and Del Mar Fairgrounds at which products

20   related to recreational boating, including boats, fishing and camping equipment

21   are exhibited and displayed along with products and services relating to

22   recreational boating.

23   63.   Defendants have by their conduct complained of above attempted to

24   impersonate as well as misappropriate Plaintiff's SERVICE MARKS and the

25   two ANNUAL SHOWS and to deceive the public into believing that the event

26   sponsored by Defendants is either endorsed by Plaintiff or is produced by

27   Plaintiff or that Defendants are now entitled to the goodwill FHS built in the

28   two ANNUAL SHOWS over 70 years.

COMPLAINT

64.     As a result of Defendants' unauthorized imitation of Plaintiff's SERVICE MARKS and Plaintiff's two ANNUAL SHOWS Defendants have created a "false endorsement" in violation of *15 U.S.C. § 1125(a)(l)(A)*.

65.     As a result of Defendants' improper "false endorsement" activities, Defendants are profiting, with minimal costs to themselves, from the considerable expenditures of effort, time and money that Plaintiff has invested over the past 70 years in developing its SERVICE MARKS and the two ANNUAL SHOWS.

66.     By reason of the foregoing, Plaintiff FHS has been irreparably harmed and will continue to be irreparably harmed.  Plaintiff is entitled to the remedies provided for in *15 U.S.C. § 1116 et seq*., including but not limited to damages, treble damages, injunctive relief, and attorney's fees.

67.     Defendants, and each of them, in performing the conduct complained of herein, acted willfully and with intent to cause injury to Plaintiff FHS.  Defendants, and each of them, are therefore guilty of malice and oppression in conscious disregard of Plaintiff FHS's rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct.

68.     Defendants threatened to, and unless restrained will, continue to engage in the wrongful and illegal acts described herein. As a result, Plaintiff will suffer great and irreparable injury, for which damages would not afford adequate relief, in that said damages would not adequately compensate for the injury to McINTOSH's business reputation, goodwill, and customer base, and Defendants' conduct, if allowed to continue, would inevitably result in the destruction of the two ANNUAL SHOWS.  Accordingly, FHS seeks injunctive relief against all Defendants' for their misconduct.

///

///

COMPLAINT

## FOURTH CLAIM FOR RELIEF

(Violation of *15 U.S.C. § 1125(a)*: Trade Name Infringement

Against All Defendants)

69.     Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 68, inclusive, as though set forth in full herein.

70.     Plaintiff FHS has registered its various TRADE NAMES.  These TRADE NAMES are words, symbols, or any combination thereof used to identify a business or occupation and distinguish it from the business or occupation of others. *California Business & Professions Code* § 14208. Trade Names "symbolize the reputation of a business as a whole. " *Stephen W Boney, Inc. v. Boney Services, Inc*., 127 F.3d 821,829 (9th Cir. 1997). The filing of any fictitious business name statement establishes a rebuttable presumption that the registrant has the exclusive right to use that trade name as well as any  other confusingly similar trade name.

71.     Defendants have used copies or will use substantially and confusingly similar variations, of Plaintiff's TRADE NAMES in interstate commerce without the consent of the Plaintiff, for the purpose of selling counterfeit and infringing services. Defendants, and each of them, have caused and continue to cause confusion, mistake, and deception in the minds of the public.

72.     Plaintiff's ownership or that of its predecessor in interest of the TRADE NAMES has been exclusive and continuous since 1950.  Plaintiff acquired all its rights to the TRADE NAMES and other intellectual property from American Sports Fishing Association and its predecessor in 2014.

73.     Plaintiff has expended enormous amounts of time, effort and money promoting its services and the two ANNUAL SHOWS through use of the TRADE NAMES such that the relevant consuming public has come to

COMPLAINT

associate Plaintiff's TRADE NAMES with Plaintiff or with Plaintiff's services of producing the two ANNUAL SHOWS, such that Plaintiff's unregistered TRADE NAMES have acquired "secondary meaning."

74.    By selling services using substantially and confusingly similar variations of the TRADE NAMES or actual reproductions of the TRADE NAMES, the Defendants have imitated, counterfeited, and infringed the Plaintiff's TRADE NAMES in interstate commerce and have violated the Lanham Act, *15 U.S.C. § 1125(a)*.

75.    By reason of the foregoing, Plaintiff has been injured in an amount not yet ascertained and is entitled to the remedies provided for in *15 U.S.C. § 1116, et seq*., including but not limited to treble damages, attorney's fees and injunctive relief.

76.    Defendants, and each of them, in performing the conduct complained of herein, acted willfully and with intent to injure Plaintiff FHS. Defendants, and each of them, are therefore guilty of malice and oppression in conscious disregard of PlaintiffMcINTOSH's rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct.

77.    Defendants threatened to, and unless restrained will, continue to engage in the wrongful and illegal acts described herein. As a result, Plaintiff will suffer great and irreparable injury, for which damages would not afford adequate relief, in that said damages would not adequately compensate for the injury to FHS's business reputation, goodwill, and customer base, and Defendants' conduct, if allowed to continue, would inevitably result in the destruction of the two ANNUAL SHOWS. Accordingly, FHS seeks injunctive relief against all Defendants' for their misconduct.

///

///

# **FIFTH CLAIM FOR RELIEF**

(Violation of Lanham Act, *15 U.S.C. § 1125(a)* for Infringement

of Trade Dress Against All Defendants)

78.     Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 77, inclusive, as though set forth in full herein.

79.     Plaintiff's TRADE DRESS of its services is the total image and overall appearance of the two ANNUAL SHOWS which have been produced for the past 70 years.  Plaintiff's two ANNUAL SHOWS has a trade dress which is the total image of the two ANNUAL SHOWS business.

80.     Plaintiff's TRADE DRESS creates a combination of mental and visual elements that taken together create a distinctive visual impression in the minds of ATTENDEES and EXHIBITORS.

81.     Plaintiff is entitled to protection for its particular combination of elements which constitute the TRADE DRESS of the two ANNUAL SHOWS as a whole.

82.     The Trade Dress or product configuration of the Defendants' event is confusingly similar to Plaintiff's TRADE DRESS. The  advertising is substantially similar. The configuration of Defendants' event is confusingly and substantially similar to Plaintiff FHS's two ANNUAL SHOWS.  Indeed, Defendants have chosen to hold the event at the same time that Plaintiff has traditionally held its event, in the same harbor and at the same venue where Plaintiff has been holding its two ANNUAL SHOWS for the last 11 years.

83.     The appropriated features of Plaintiff's TRADE DRESS are non-functional.  Furthermore, Plaintiff's TRADE DRESS has obtained secondary meaning such that consumers associate the TRADE DRESS of the two ANNUAL SHOWS with FHS or with a single anonymous source (which is FHS).

84. Furthermore, there is a likelihood that the public will be confused by the infringing use of Plaintiff's TRADE DRESS by Defendants.

85. By reason of the foregoing, Plaintiff FHS has been irreparably harmed and will continue to be irreparably harmed. Plaintiff is entitled to the remedies provided for in *15 U.S.C. § 1116 et seq.*, including but not limited to damages, treble damages, injunctive relief and attorney's fees.

86. Defendants, and each of them, in performing the conduct complained of herein, acted willfully and with intent to cause injury to Plaintiff FHS. Defendants, and each of them, were therefore guilty of malice and oppression in conscious disregard of Plaintiff FHS' s rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct.

87. Defendants threatened to, and unless restrained will continue to engage in the wrongful and illegal acts described herein. As a result, Plaintiff will suffer great and irreparable injury, for which damages would not afford adequate relief, in that said damages would not adequately compensate for the injury to FHS's business reputation, goodwill, and customer base, and Defendants' conduct, if allowed to continue, would inevitably result in the destruction of the two ANNUAL SHOWS. Accordingly, FHS seeks injunctive relief against all Defendants' for their misconduct.

## SIXTH CLAIM FOR RELIEF

(Violation of: *15 U.S.C. § 1125(a)*; Unfair Competition

Against All Defendants)

88. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 87, inclusive, as though set forth in full herein.

89. Defendants' use of copies of the SERVICE MARKS or of deceptively and confusingly similar variations of the SERVICE MARKS

COMPLAINT

1    constitutes passing off, infringement, and misappropriation of the SERVICE

2    MARKS, in violation of *15 U.S.C. § l 125(a)*.

3        90.    By reason of the foregoing, Plaintiff FHS has been irreparably

4    harmed and will continue to be irreparably harmed.  Plaintiff is entitled to the

5    remedies provided for in *15 U.S.C. § 1116 et seq*., including but not limited to

6    damages, treble  damages, injunctive  relief, and attorney's fees.

7        91.    Defendants, and each of them, in performing the conduct

8    complained of herein, acted willfully and with intent to cause injury to Plaintiff

9    FHS. Defendants, and each of them, were therefore guilty of malice and

10   oppression in conscious disregard of Plaintiff FHS' s rights, thereby warranting

11   an assessment of punitive damages in an amount appropriate to punish

12   Defendants and deter others from engaging in similar misconduct.

13       92.    Defendants threatened to, and unless restrained will, continue to

14   engage in the wrongful and illegal acts described herein. As a result, Plaintiff

15   will suffer great and irreparable injury, for which damages would not afford

16   adequate relief, in that said damages would not adequately compensate for the

17   injury to FHS' s business reputation, goodwill, and customer base, and

18   Defendants' conduct, if allowed to continue, would inevitably result in the

19   destruction of the two ANNUAL SHOWS. Accordingly, FHS seeks injunctive

20   relief against all Defendants' for their misconduct.

21   **SEVENTH CLAIM FOR RELIEF**

22   (SERVICE MARK Dilution in Violation of *15 U.S.C. § 1125(c)*

23   Against All Defendants)

24       93.    Plaintiff repeats, realleges and incorporates by reference the

25   allegations contained in paragraphs 1 through 92, inclusive, as though set forth

26   in full herein.

27       94.    The SERVICE MARKS of the two ANNUAL SHOWS have

28   been famous and distinctive from at least as early as June 1990.

COMPLAINT

95.    Defendants' use of the SERVICE MARKS or of versions of the SERVICE MARKS which are deceptively and confusingly similar, in connection with the counterfeit and infringing service dilutes the distinctive quality of and tarnishes the public image of the SERVICE MARKS and the two ANNUAL SHOWS, and harms the reputation of the two ANNUAL SHOWS.

96.    The Defendants attempt to produce the two ANNUAL SHOWS but in their name, at the Long Beach Convention Center and Del Mar Fairgrounds, with advertising geared to capitalize on the secondary meaning associated with the two ANNUAL SHOWS.

97.    Defendants willfully and intentionally trade on, dilute, and tarnish the SERVICE MARKS and the reputation of the two ANNUAL SHOWS.

98.    By so diluting and tarnishing the SERVICE MARKS and the two ANNUAL SHOWS, the Defendants have violated the Federal Trademark Dilution Act of 1995, Section 43(c) of the Lanham Act, *15 U.S.C. § l 125(c)*.

99.    By reason of the foregoing, Plaintiff FHS has been irreparably harmed and will continue to be irreparably harmed. Plaintiff is entitled to the remedies provided for in *15 U.S.C. § 1116 et seq.*, including but not limited to damages, treble damages, injunctive relief, and attorney's fees.

100.    Defendants, and each of them, in performing the conduct complained of herein, acted willfully and with intent to cause injury to Plaintiff FHS. Defendants, and each of them, were therefore guilty of malice and oppression in conscious disregard of Plaintiff FHS' s rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct.

101.    Defendants threatened to, and unless restrained will, continue to engage in the wrongful and illegal acts described herein. As a result, Plaintiff will suffer great and irreparable injury, for which damages would not afford adequate relief, in that said damages would not adequately compensate for the

1  injury to FHS' s business reputation, goodwill, and customer base, and

2  Defendants' conduct, if allowed to continue, would inevitably result in the

3  destruction of the two ANNUAL SHOWS. Accordingly, FHS seeks injunctive

4  relief against all Defendants' for their misconduct.

5  **EIGHTH CLAIM FOR RELIEF**

6  (Violation of *California Business & Professions Code* § 14330(a):

7  Infringement of Unregistered SERVICE MARK Against All Defendants)

8  102.   Plaintiff repeats, realleges and incorporates by reference the

9  allegations contained in paragraphs 1 through 101, inclusive, as though set

10  forth in full herein.

11  103.   Defendants' misappropriation, counterfeiting, and infringement of

12  the SERVICE MARKS constitute the assumption, adoption, or use, with intent

13  to deceive or mislead the public, for advertising purposes or for the purposes of

14  trade, a symbol or simulation thereof or a part of a symbol or simulation

15  thereof, which may deceive or mislead the public into believing that a

16  connection exists between the Defendants and/or Defendants' event, on the one

17  hand, and FHS (by name or as an anonymous source) and/or the two ANNUAL

18  SHOWS, on the other.

19  104.   By so misappropriating, counterfeiting, and infringing the

20  SERVICE MARKS, the Defendants have violated *California Business &*

21  *Professions Code* § 14330.

22  105.   By reason of the acts of Defendants complained of herein Plaintiff

23  FHS is entitled to an injunction against Defendants as provided for in

24  *California Business & Professions Code* § 14330.

25  106.   Defendants, and each of them, in performing the conduct

26  complained of herein, acted willfully and with intent to cause injury to Plaintiff

27  FHS. Defendants, and each of them, were therefore guilty of malice and

28  oppression in conscious disregard of Plaintiff FHS' s rights, thereby warranting

COMPLAINT

1  an assessment of punitive damages in an amount appropriate to punish
2  Defendants and deter others from engaging in similar misconduct.

3      107.   Defendants threatened to, and unless restrained will, continue to
4  engage in the wrongful and illegal acts described herein. As a result, Plaintiff
5  will suffer great and irreparable injury, for which damages would not afford
6  adequate relief, in that said damages would not adequatelycompensate for the
7  injury to FHS' s business reputation, goodwill, and customer base, and
8  Defendants' conduct, if allowed to continue, would inevitably result in the
9  destruction of the two ANNUAL SHOWS.  Accordingly, FHS seeks injunctive
10  relief against all Defendants' for their misconduct.

11                    **NINTH CLAIM FOR RELIEF**
12              (Common Law Unfair Competition Against All Defendants)

13      108.   Plaintiff repeats, realleges and incorporates by  reference the
14  allegations contained in paragraphs 1 through 107, inclusive, as though set
15  forth in full herein.

16      109.   Defendants have unlawfully, unfairly and deceptively engaged in a
17  pattern of conduct whereby they have used without the consent of FHS, the
18  confusingly similar variations or the actual SERVICE MARKS, TRADE
19  NAMES and TRADE DRESS associated with Plaintiff's two ANNUAL
20  SHOWS. Defendants have unlawfully and unfairly taken the various
21  intellectual and tangible properties of Plaintiff which are the results of
22  Plaintiff's organization and expenditures of labor, skill, time and money.
23  Defendants in appropriating these tangible and intellectual properties of FHS,
24  are "endeavoring to reap what [they] have not sown" and these Defendants are
25  free-riders seeking to enjoy the "benefits of a good without having invested the
26  time, money and effort of creating it."

27      110.   Defendants have, by unlawful, unfair and deceptive practices,
28  represented and advertised the two ANNUAL SHOWS as their own so as to

cause confusion as to source and as a consequence intentionally taken the customers of FHS from FHS's two ANNUAL SHOWS.

111.   By reason of the acts of Defendants complained of herein, Plaintiff FHS is entitled to an injunction against Defendants as provided for in *California Business & Professions Code* § 14330.

112.   Defendants, and each of them, in performing the conduct complained of herein, acted willfully and with intent to cause injury to Plaintiff FHS. Defendants, and each of them, were therefore guilty of malice and oppression in conscious disregard of Plaintiff FHS' s rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct.

113.   Defendants threatened to, and unless restrained will, continue to engage in the wrongful and illegal acts described herein. As a result, Plaintiff will suffer great and irreparable injury, for which damages would not afford adequate relief, in that said damages would not adequately compensate for the injury to FHS's business reputation, goodwill, and customer base, and Defendants' conduct, if allowed to continue, would inevitably result in the destruction of the two ANNUAL SHOWS. Accordingly, FHS seeks injunctive relief against all Defendants' for their misconduct.

## **TENTH CLAIM FOR RELIEF**

(Common Law Trade Name Infringement Against All Defendants)

114.   Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 113, inclusive, as though set forth in full herein.

115.   Defendants' use of copies or of substantially and confusingly similar variations of the TRADE NAMES in interstate commerce without the consent of the Plaintiff, for the purpose of selling counterfeit and infringing services, has cause and continues to cause confusion, mistake, and deception in the

1    minds of the public in violation of the common law of California.

2        116.    Plaintiff's or that of its predecessor in interest use of the TRADE

3    NAMES has been exclusive  and continuous since at least 1950.

4        117.    Plaintiff has expended enormous amounts of time, effort and

5     money promoting its services and the two ANNUAL SHOWS through use of

6    the TRADE NAMES such that the relevant consuming public has come to

7    associate Plaintiff's TRADE NAMES with Plaintiff or with Plaintiff's services

8    of producing the two ANNUAL SHOWS, such that Plaintiff's unregistered

9    TRADE NAMES have acquired "secondary meaning."

10       118.    By selling services using substantially and confusingly similar

11   variations of the TRADE NAMES or actual reproductions of the TRADE

12   NAMES, the Defendants have imitated, counterfeited, and infringed the

13   Plaintiff's SERVICE MARKS in interstate commerce and have violated the

14   Lanham Act, *15 U.S.C. § 1125(a)*.

15       119.    By reason of the acts of Defendants complained of herein, Plaintiff

16   FHS is entitled to an injunction against Defendants as provided for in

17   *California Business & Professions Code* § 14330.

18       120.    Defendants, and each of them, in performing the conduct

19   complained of herein, acted willfully and with intent to cause injury to Plaintiff

20   FHS. Defendants, and each of them, were therefore guilty of malice and

21   oppression in conscious disregard of Plaintiff FHS' s rights, thereby warranting

22   an assessment of punitive damages in an amount appropriate to punish

23   Defendants and deter others from engaging in similar misconduct.

24       121.    Defendants threatened to, and unless restrained will, continue to

25   engage in the wrongful and illegal acts described herein. As a result, Plaintiff

26   will suffer great and irreparable injury, for which damages would not afford

27   adequate relief in that said damages would not adequately compensate for the

28   injury to FHS' s business reputation, goodwill, and customer base, and

Defendants' conduct, if allowed to continue, would inevitably result in the destruction of the two ANNUAL SHOWS. Accordingly, FHS seeks injunctive relief against all Defendants' for their misconduct.

## ELEVENTH CLAIM FOR RELIEF

(Common Law Misappropriation Against All Defendants)

122.   Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 121, inclusive, as though set forth in full herein.

123.   Plaintiff FHS invested substantial time, skill, and money in developing its property, namely, the two ANNUAL SHOWS as well as the SERVICE MARKS associated with the two ANNUAL SHOWS.

124.   Defendants have improperly appropriated and used FHS's property, namely, using substantially and confusingly similar marks as well as advertising an event which is confusingly and substantially similar if not identical to the two ANNUAL SHOWS. Therefore, Defendants have appropriated and are using FHS's two ANNUAL SHOWS, SERVICE MARKS, and TRADE DRESS at little or no cost to Defendants.

125.   Defendants' appropriation and use of Plaintiff FHS's property was without the authorization or consent of Plaintiff FHS.

126.   As a direct and proximate result of Defendants' unlawful conduct described herein, Plaintiff has been damaged and injured in an amount which is unascertainable at this time but which will be proven at trial.

127.   In doing the acts herein alleged, Defendants have acted with the intent to harm Plaintiff and have acted with oppression, fraud, and malice and therefore Plaintiff is entitled to punitive damages. Defendants' actions are still ongoing and if not enjoined, will cause irreparable harm to FHS in that the Defendants' unrestrained conduct will lead to the ultimate demise and complete destruction of the two ANNUAL SHOWS and the complete usurpation of the

SERVICE MARKS. Damages will be insufficient to compensate for such destruction of one's business and therefore Plaintiff seeks immediate injunctive relief from this honorable Court.

128.    Defendants, and each of them, in performing the conduct complained of herein, acted willfully and with intent to cause injury to Plaintiff FHS. Defendants, and each of them, were therefore guilty of malice and oppression in conscious disregard of Plaintiff FHS's rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct.

129.    Defendants threatened to, and unless restrained will, continue to engage in the wrongful and illegal acts described herein. As a result, Plaintiff will suffer great and irreparable injury, for which damages would not afford adequate relief, in that said damages would not adequately compensate for the injury to FHS' s business reputation, goodwill, and customer base, and Defendants' conduct, if allowed to continue, would inevitably result in the destruction of the two ANNUAL SHOWS. Accordingly, FHS seeks injunctive relief against all Defendants' for their misconduct.

**TWELFTH CLAIM FOR RELIEF**

(Common Law Conversion Against All Defendants)

130.    Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 129, inclusive, as though set forth in full herein.

131.    Plaintiff FHS has an ownership or right to possession of the property known as the two ANNUAL SHOWS, SERVICE MARKS, TRADE NAMES, and TRADE DRESS. Defendants have improperly, illegally, and without consent of Plaintiff FHS misappropriated FHS' s property and have thereby caused it to suffer damages.

132.    Accordingly, Defendants have wrongfully converted the intellectual

property rights of Plaintiff FHS for which illegal act FHS seeks damages which are unascertainable at this time.

133.   Defendants' acts were intentional and designed to harm Plaintiff. Defendants' acts were done with intentional, wanton, and willful disregard of FHS' s rights and accordingly such acts were willful and oppressive and therefore Plaintiff FHS is entitled to punitive damages.

134.   Defendants, and each of them, in performing the conduct complained of herein, acted willfully and with intent to cause injury to Plaintiff FHS. Defendants, and each of them, were therefore guilty of malice and oppression in conscious disregard of Plaintiff FHS's rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct.

135.   Defendants threatened to, and unless restrained will, continue to engage in the wrongful and illegal acts described herein. As a result, Plaintiff will suffer great and irreparable injury, for which damages would not afford adequate relief, in that said damages would not adequately compensate for the injury to FHS's business reputation, goodwill, and customer base, and Defendants' conduct, if allowed to continue, would inevitably result in the destruction of the two ANNUAL SHOWS. Accordingly, FHS seeks injunctive relief against all Defendants' for their misconduct.

## THIRTEENTH CLAIM FOR RELIEF

(Intentional Interference With Contractual Relations

Against All Defendants )

136.   Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 135, inclusive, as though set forth in full herein.

137.   Plaintiff FHS or its predecessor in interest has had a contractual relationship with the Long Beach Convention Center and the Del Mar

COMPLAINT

Fairgrounds ("the FACILITIES") since 2010 to produce the two ANNUAL
SHOWS at the FACILITIES.  Pursuant to the contractual relationship the
FACILITIES acknowledged that Plaintiff FHS owns all of the intellectual
property relating to the two ANNUAL SHOWS including all of the  various
SERVICE MARKS, the TRADE DRESS, and the TRADE NAMES  described
herein.

138.   Each year since 2010, Plaintiff FHS has engaged in a series of
discussions with representatives of the FACILITIES. As a result of these
discussions, an agreement had been reached for Plaintiff to renew its contract to
produce the two ANNUAL SHOWS at the FACILITIES for 2020 and 2021.

139.   Defendants knew that FHS and its predecessor in interest had an
exclusive relationship with the FACILITIES and that FHS had created the
premier  boat show in Southern California, it had an excellent reputation for
running at the FACILITIES, and that FHS had invested in an expensive
marketing campaign every year.

140.   Plaintiff's are informed and believe, and thereon allege, that
Defendants BH or ML directly or indirectly communicated with the
FACILITIES some time in December 2020 to allow Defendants to produce a
show confusingly similar to FHS's two ANNUAL SHOWS.

141.   Plaintiff's are informed and believe, and thereon allege that during
the October-December 2020 time period, Defendants communicated to the
FACILITIES confidential trade secrets of FHS and other information to
negotiate the essential terms of a contract, or received a promise for a renewal
of the contract FHS had for 10 years, or was obtaining renewal of a contract
FHS had for 10 years, or had an executory contract, or had an agreement to
renew a contract, FHS had for 10 years, for producing the two ANNUAL
SHOWS.

142.   Defendants, without any warning or notice to Plaintiff FHS, have

1    actively disrupted and wrongfully interfered with the contractual relationship

2    between FHS and the FACILITIES so that Defendants could produce an event

3    confusingly similar to FHS's two ANNUAL SHOWS at the FACILITIES.

4        143.   FHS, as a result of the active disruption and wrongful interference

5    with its contractual relationship, incurred substantial costs  and expenses in

6    attempting to mitigate its damages by relocating the two ANNUAL SHOWS to

7    another venue and having to recreate its two ANNUAL SHOWS on different

8    date than it had originally planned.

9        144.   As a proximate result of the actions of Defendant and the

10   FACILITIES, jointly and severally, complained of herein, FHS has suffered

11   foreseeable damages which are unascertainable at this time, but will be proven

12   at trial.

13       145.   Defendants, and each of them, in performing the conduct

14   complained of herein, acted willfully and with intent to cause injury to Plaintiff

15   FHS. Defendants, and each of them, were therefore guilty of malice and

16   oppression in conscious disregard of Plaintiff FHS' s rights, thereby warranting

17   an assessment of punitive damages in an amount appropriate to punish

18   Defendants and deter others from engaging in similar misconduct.

19                   **FOURTEENTH CLAIM FOR RELIEF**

20            (Intentional Interference with Prospective Economic Relationship,

21               Between FHS and the FACILITIES, Against Defendant )

22       146.   Plaintiff repeats, realleges and incorporates by reference the

23   allegations contained in paragraphs 1 through 145, inclusive, as though set

24   forth in full herein.

25       147.   Alternatively, if there was not a valid and enforceable contractual

26   relationship or agreement between Plaintiff FHS and the FACILITIES, there

27   was a prospective economic advantage that FHS would renew a contract with

28   the FACILITIES if not interfered with by Defendant .

148.   Defendants knew of the long-standing 10 year  economic relationship between FHS and the FACILITIES.  Defendants knew that since Plaintiff FHS had produced the two ANNUAL SHOWS for the last 30 years, and indeed, had produced the two ANNUAL SHOWS at the FACILITIES for the last 10 years, that FHS had an economic expectancy of producing the two ANNUAL SHOWS at the FACILITIES in 2021 and in future years.

149.   Defendants knew as shareholders, managers and employees that: (1) FHS had an exclusive relationship with the FACILITIES; (2) that FHS had created the premier boating, fishing and camping ("Outdoor Recreational Sports" or "ORS") shows in Southern California; (3) these shows had excellent reputations at the FACILITIES; and (4) that FHS had invested in an expensive marketing and promotion campaign.

150.   Defendants also knew that consumers, namely, boat owners of yachts and large boats or potential purchasers of recreational boating, fishing and camping equipment, along with exhibitors all of whom have attended the two ANNUAL SHOWS over the past 10 years, would associate with FHS an event strikingly and confusingly similar to the two ANNUAL SHOWS if said event was held at the FACILITIES.

151.   Therefore, Plaintiff's are informed and believe, and thereon allege, that Defendants secretly negotiated or secretly negotiated to attempt to give the economic advantage associated with the two ANNUAL SHOWS to Defendants.

152.   Defendants knew that Plaintiff FHS relied on the FACILITIES as the venue for the two ANNUAL SHOWS and knew that the consuming public and/or exhibitors who had attended or participated in the two ANNUAL SHOWS in the past were accustomed  to attending the two ANNUAL SHOWS at the FACILITIES.

153.   Therefore Defendants were confident that they would derive substantial economic benefit from interfering with FHS's economic expectancy

with the FACILITIES.  Defendants sought to capitalize on the goodwill and reputation of the two ANNUAL SHOWS by  actively disrupting and wrongfully interfering with FHS's prospective  economic advantage. Defendants have wrongfully conspired in seeking to produce events confusingly similar to the two ANNUAL SHOWS, and thereby diverting economic benefits, that had previously belonged to FHS, over to Defendants.

154.   Because of Defendants' wrongful conduct, FHS has been foreseeably damaged in an amount that is unascertainable at this time but will be proven at trial.

155.   Defendants, and each of them, in performing the conduct complained of herein, acted willfully and with intent to cause injury to Plaintiff FHS. Defendants, and each of them, were therefore guilty of malice and oppression in conscious disregard of Plaintiff FHS' s rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct.

## FIFTEENTH CLAIM FOR RELIEF

(Intentional Interference With Prospective Economic Advantage
Between FHS and Exhibitors Against All Defendants)

156.   Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 155, inclusive, as though set forth in full herein.

157.   Plaintiff is informed and believed, and thereon alleges, that Defendants knew of the long-standing and past contractual and economic relationships that FHS had with the exhibitors who participated in the two ANNUAL SHOWS over the previous 10 years, and in particular those exhibitors who had participated in the two ANNUAL SHOWS during the previous 10 years it has been held at the FACILITIES.

158.   In collaborating to produce an event confusingly similar to the two

1    ANNUAL SHOWS, including infringing the SERVICE MARKS, TRADE

2    NAMES, and TRADE DRESS as well as engaging in false and deceptive

3    advertising, Defendants may have succeeded in confusing and luring exhibitors

4    who normally would have contracted with FHS to exhibit at the two ANNUAL

5    SHOWS, to instead exhibit at the event being produced by Defendants.

6        159.   Defendants knew of FHS's long-standing economic relationship

7    with these exhibitors and knew of FHS's expectancy to execute contracts with

8    these exhibitors to participate in the 2021 and 2022 two ANNUAL SHOWS.

9        160.   Defendants knew that by their actions they were wrongfully

10   interfering with, actively disrupting prospective economic advantages of FHS,

11   and proximately causing damage to and disrupting long-standing relationships

12   between the EXHIBITORS and FHS. As a direct and proximate result of

13   Defendants' conduct, FHS has been damaged in an amount that is

14   unascertainable at this time but will be proven at trial.

15       161.   Defendants, and each of them, continue to threaten and  interfere

16   with the economic relationships between FHS and the  EXHIBITORS with

17   whom it has dealt with for the last 10 years. Such  continued interference will

18   cause great and irreparable injury, for which  damages would not afford

19   adequate relief, and that they will not completely  compensate for the injuries to

20   FHS and to FHS' s business, namely, the complete eradication of the two

21   ANNUAL SHOWS. Therefore, Plaintiff FHS seeks injunctive relief against all

22   Defendants for the acts complained of herein.

23       162.   Defendants, and each of them, in performing the conduct

24   complained of herein, acted willfully and with intent to cause injury to Plaintiff

25   FHS. Defendants, and each of them, were therefore guilty of malice and .

26   oppression in conscious disregard of Plaintiff FHS' s rights, thereby warranting

27   an assessment of punitive damages in an amount appropriate to punish

28   Defendants and deter others from engaging in similar misconduct.

## **SIXTEENTH CLAIM FOR RELIEF**

(Intentional Interference With Prospective Economic Advantage Between

FHS and Show Customers Against All Defendants)

163.   Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 162, inclusive, as though set forth in full herein.

164.   Plaintiff's are informed and believes, and thereon allege, that Defendants knew of the long-standing and past contractual and prospective economic relationships that FHS had with consumers who have participated in the two ANNUAL SHOWS over the previous 70 years, and in particular those actual and potential consumers who have participated in the two ANNUAL SHOWS during the previous 10 years it has been held at the FACILITIES.

165.   In collaborating to produce an event confusingly similar to the two ANNUAL SHOWS, including infringing the SERVICE MARKS, TRADE NAMES, and TRADE DRESS as well as engaging in false and deceptive advertising, Defendants may have succeeded or are attempting to succeed in confusing and luring actual and potential consumers who normally would have contracted with (e.g., bought tickets) FHS to attend the two ANNUAL SHOWS, to instead attend the Defendants' event.

166.   Defendants knew of FHS's long-standing economic relationship with these actual and potential consumers of recreational, boating, fishing and camping equipment and services and knew of FHS's expectancy to have them attend the 2021 and 2022 two ANNUAL SHOWS and purchase boats from EXHIBITORS.

167.   Defendants knew that by their actions they were wrongfully interfering with, actively disrupting prospective economic advantages of FHS, and proximately causing damage and disrupting long-standing relationships between actual and potential consumers of recreational, boating, fishing and

camping equipment and services and FHS.  As a direct and proximate result of Defendants' conduct, FHS has been damaged in an amount that is unascertainable at this time but will be proven at trial.

168.   Defendants, and each of them, continue to threaten and interfere with the economic relationships between FHS and the actual and potential yacht and large boat owners, with whom FHS has dealt with for the last 10 years. Such continued interference will cause great and irreparable injury, for which damages would not afford adequate relief, and that they will not completely compensate for the injuries to FHS and to FHS' s business. Therefore, Plaintiff FHS seeks injunctive relief against all Defendants for the acts complained of herein.

169.   Defendants, and each of them, in performing the conduct complained of herein, acted willfully and with intent to cause injury to Plaintiff FHS. Defendants, and each of them, were therefore guilty of malice and oppression in conscious disregard of Plaintiff FHS's rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct.

### SEVENTEENTH CLAIM FOR RELIEF

(Unjust Enrichment and Imposition of Constructive Trust

Against All Defendants)

170.   Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 169, inclusive, as though set forth in full herein.

171.   By virtue of Defendants' unlawful and illegal acts described herein above, Defendants have become, are becoming, and will become unjustly enriched at the expense of Plaintiff whereby revenues and profits properly belonging to Plaintiff have been diverted to Defendants.

172.   By virtue of Defendants' improper and illegal conduct, Defendants

1   have possession of intellectual property, namely, funds, revenues, and profits

2   which rightfully belong to Plaintiff where by virtue of Defendants' wrongful

3   acts, Defendants hold such property and funds as a constructive trustee for the

4   benefit of Plaintiff.

5       173.   Accordingly, Plaintiff requests an order from this Court as follows:

6           a.    Declaring that Defendants hold such property described

7   above in trust for Plaintiff;

8           b.    Declaring Plaintiff the owner of such property;

9   and,

10          c.    Compelling Defendants to transfer, convey, or deliver all

11  such property and funds to Plaintiff.

12      174.   In doing the things herein alleged, Defendants, and each of them,

13  acted willfully and with intent to cause injury to Plaintiff FHS. Defendants, and

14  each of them, were therefore guilty of malice and oppression in conscious

15  disregard of Plaintiff FHS' s rights, thereby warranting an assessment of

16  punitive damages in an amount appropriate to punish Defendants and deter

17  others from engaging in similar misconduct.

18      175.   Defendants threatened to, and unless restrained will, continue to

19  engage in the wrongful and illegal acts described herein for which Plaintiff will

20  suffer great and irreparable injury, for which damages would not afford

21  adequate relief, in that said damages would not adequately compensate for the

22  injury to FHS and to FHS' s business reputation, goodwill, and customer base

23  and would inevitably result in the destruction of the two ANNUAL SHOWS.

24  Accordingly, FHS seeks injunctive relief against all Defendants' for

25  misconduct.

26              **EIGHTEENTH CLAIM FOR RELIEF**

27          (Breach of Fiduciary Duty Against All Defendants)

28      176.   Plaintiff repeats, realleges and incorporates by reference the

COMPLAINT

allegations contained in paragraphs 1 through 175, inclusive, as though set forth in full herein.

177.   All Defendants were or are employees of FHS.  In their capacity, they were each individually and collectively agents for their principal, FHS. For each of these Defendants in their capacity as employees of FHS, these Defendants as part of their fiduciary duties owed a duty of loyalty whereby they were not to betray confidences or trade secrets of FHS and were to carry out their duties whereby FHS was their sole and exclusive employer, with the utmost diligence and dedication and not be using their knowledge of FHS business operations and trade secrets for the benefit of themselves personally or for the benefit of themselves collectively in forming another enterprise that would compete directly against FHS.  Indeed, each and every Defendant named herein violated their duty of loyalty and fidelity which duties were set forth in the Employment Handbook, referenced herein above and attached hereto as Exhibit "5."

178.   As outlined above, Defendants have clearly breached that duty by conspiring to take the business contacts, knowledge of business operations, vendor contacts, customer contacts, exhibitor contacts and other matters that constitute trade secrets and proprietary information of FHS and use it for the benefit of an unnamed investor as well as themselves in forming a new enterprise that would openly and directly compete with FHS without any warning whatsoever to FHS and its President and CEO, Duncan McIntosh.

179.   As outlined above, by tortiously interfering with the prospective and current business opportunities of FHS, Defendant, each of them and collectively, violated their fiduciary duty as agents operating on behalf of their exclusive employer, FHS.

180.   Because of the foregoing, FHS has been damaged in an amount that is unascertainable but which is believed to exceed $1 million, or an amount to

1   be proven at trial.

2   181.   In doing the things herein alleged, Defendants, and each of them,

3   acted willfully and with intent to cause injury to Plaintiff FHS. Defendants, and

4   each of them, were therefore guilty of malice and oppression in conscious

5   disregard of Plaintiff FHS's rights, thereby warranting an assessment of

6   punitive damages in an amount appropriate to punish Defendants and deter

7   others from engaging in similar misconduct.

8   182.   Defendants threatened to, and unless restrained will, continue to

9   engage in the wrongful and illegal acts described herein for which Plaintiff's

10   will suffer great and irreparable injury, for which damages would not afford

11   adequate relief in that said damages would not adequately compensate for the

12   injury to FHS and to FHS's business reputation, goodwill, and customer base

13   and would inevitably result in the destruction of the two ANNUAL SHOWS.

14   Accordingly, FHS seeks injunctive relief against all Defendants' for

15   misconduct.

16   ## NINETEENTH CLAIM FOR RELIEF

17   (Breach of Fiduciary Duty Against Defendant Gary Michael Lum)

18   183.   Plaintiff repeats, realleges and incorporates by reference the

19   allegations contained in paragraphs 1 through 182, inclusive, as though set

20   forth in full herein.

21   184.   Defendant ML owed a fiduciary duty in relations to both FHS, as a

22   corporation, and to its stockholders, Duncan McIntosh and Defendant BH. In

23   that fiduciary capacity, Defendant ML owed a duty of loyalty, honesty, integrity

24   as well as a commitment not to misappropriate the trade secrets and corporate

25   opportunities that rightfully belong to FHS.

26   185.   As detailed above, Defendant ML has stealthfully and notoriously

27   conspired with the rest of the Defendants to compromise the trade secrets and

28   steal the trade secrets and other proprietary information of FHS along with

stealing and misappropriating current economic opportunities as well as future economic opportunities. Defendant ML clearly breached his employment contract in which that fiduciary duty is set forth.

186.   Because of the foregoing, FHS has been damaged in an amount that is unascertainable but which is believed to exceed $1 million, or an amount to be proven at trial.

187.   In doing the things herein alleged, Defendants, and each of them, acted willfully and with intent to cause injury to Plaintiff FHS. Defendants, and each of them, were therefore guilty of malice and oppression in conscious disregard of Plaintiff FHS' s rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct.

188.   Defendants threatened to, and unless restrained will, continue to engage in the wrongful and illegal acts described herein for which Plaintiff's will suffer great and irreparable injury, for which damages would not afford adequate relief in that said damages would not adequately compensate for the injury to FHS and to FHS's business reputation, goodwill, and customer base and would inevitably result in the destruction of the two ANNUAL SHOWS. Accordingly, FHS seeks injunctive relief against all Defendants' for misconduct.

## TWENTIETH CLAIM FOR RELIEF

(Breach of Fiduciary Duty Against Defendant Frederick Bartlett Hall)

189.   Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 188, inclusive, as though set forth in full herein.

190.   Defendant BH owed a fiduciary duty in relations to both FHS, as a corporation, and to its stockholders, Duncan McIntosh. In that fiduciary capacity, Defendant BH owed a duty of loyalty, honesty, integrity as well as a

commitment not to misappropriate the trade secrets and corporate opportunities that rightfully belong to FHS.

191.    As detailed above, Defendant BH has stealthfully and notoriously conspired with the rest of the Defendants to compromise the trade secrets and steal the trade secrets and other proprietary information of FHS along with stealing and misappropriating current economic opportunities as well as future economic opportunities. Defendant BH clearly breached his employment contract in which that fiduciary duty is set forth. *See* Exhibit "1" attached hereto.

192.    Because of the foregoing, FHS has been damaged in an amount that is unascertainable but which is believed to exceed $1 million or an amount to be proven at trial.

193.    In doing the things herein alleged, Defendants, and each of them, acted willfully and with intent to cause injury to Plaintiff FHS. Defendants, and each of them, were therefore guilty of malice and oppression in conscious disregard of Plaintiff FHS' s rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct.

194.    Defendants threatened to, and unless restrained will, continue to engage in the wrongful and illegal acts described herein for which Plaintiff's will suffer great and irreparable injury, for which damages would not afford adequate relief in that said damages would not adequately compensate for the injury to FHS and to FHS's business reputation, goodwill, and customer base and would inevitably result in the destruction of the two ANNUAL SHOWS. Accordingly, FHS seeks injunctive relief against all Defendants' for misconduct.

///

///

# TWENTY-FIRST CLAIM FOR RELIEF

(Breach of Contract Against Defendant Frederick Bartlett Hall)

195.   Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 194, inclusive, as though set forth in full herein.

196.   Defendant BH currently has a contract of employment with FHS. Under the terms of that agreement, Defendant BH is to provide his services and devote his efforts solely and exclusively for the benefit of FHS.  As outlined herein above, Defendant BH, while still under contract with FHS has been secretly and illegally devoting his effort for the interests of another enterprise in which all Defendants seek to participate in this other enterprise and openly and illegally and unfairly compete against FHS.  *See* Exhibit "1" attached hereto.

197.   Defendant BH currently has a Shareholder Agreement with FHS. Under the terms of that agreement, Defendant BH is to provide his services and devote his efforts solely and exclusively for the benefit of FHS.  As outlined herein above, Defendant BH, while still under contract with FHS has been secretly and illegally devoting his effort for the interests of another enterprise in which all Defendants seek to participate in this other enterprise and openly and illegally and unfairly compete against FHS.  *See* Exhibit "3" attached hereto.

198.   Indeed, within every California contract is a duty of good faith and fair dealing and clearly Defendant BH's conduct, as described herein above breaches that implied covenant as well as the explicit duties of rending full and undivided loyalty to FHS.  Defendant BH's conduct has caused direct damages to FHS in an amount that is unascertained at the moment, but which is believed to exceed $1 million, or an amount to be proven at trial.

199.   In doing the things herein alleged, Defendants, and each of them, acted willfully and with intent to cause injury to Plaintiff FHS. Defendants, and each of them, were therefore guilty of malice and oppression in conscious

1    disregard of Plaintiff FHS' s rights, thereby warranting an assessment of

2    punitive damages in an amount appropriate to punish Defendants and deter

3    others from engaging in similar misconduct.

4        200.   Defendants threatened to, and unless restrained will, continue to

5    engage in the wrongful and illegal acts described herein for which Plaintiff's

6    will suffer great and irreparable injury, for which damages would not afford

7    adequate relief in that said damages would not adequately compensate for the

8    injury to FHS and to FHS's business reputation, goodwill, and customer base

9    and would inevitably result in the destruction of the two ANNUAL SHOWS.

10   Accordingly, FHS seeks injunctive relief against all Defendants' for

11   misconduct.

12                        **TWENTY-SECOND CLAIM FOR RELIEF**

13                (Breach of Contract Against Defendant Gary Michael Lum)

14       201.   Plaintiff repeats, realleges and incorporates by reference the

15   allegations contained in paragraphs 1 through 200, inclusive, as though set

16   forth in full herein.

17       202.   Defendant Gary Michael Lum, prior to his resignation, was under a

18   contract of employment with FHS,.  Under the terms of that agreement,

19   Defendant ML was to provide his services and devote his efforts solely and

20   exclusively for the benefit of FHS.  As outlined herein above, Defendant ML,

21   while still under contract with FHS had been secretly and illegally devoting his

22   effort for the interests of another enterprise in which all Defendants seek to

23   participate in this other enterprise and openly and illegally and unfairly

24   compete against FHS.  *See* Exhibit "2," attached hereto.

25       203.   Indeed, within every California contract is a duty of good faith and

26   fair dealing and clearly Defendant ML's conduct, as described herein above

27   breaches that implied covenant as well as the explicit duties of rending full and

28   undivided loyalty to FHS.  Defendant ML's conduct has caused direct damages

1    to FHS in an amount that is unascertained at the moment, but which is believed

2    to exceed $1 million, or an amount to be proven at trial.

3        204.   In doing the things herein alleged, Defendants, and each of them,

4    acted willfully and with intent to cause injury to Plaintiff FHS. Defendants, and

5    each of them, were therefore guilty of malice and oppression in conscious

6    disregard of Plaintiff FHS' s rights, thereby warranting an assessment of

7    punitive damages in an amount appropriate to punish Defendants and deter

8    others from engaging in similar misconduct.

9        205.   Defendants threatened to, and unless restrained will, continue to

10   engage in the wrongful and illegal acts described herein for which Plaintiff's

11   will suffer great and irreparable injury, for which damages would not afford

12   adequate relief in that said damages would not adequately compensate for the

13   injury to FHS and to FHS's business reputation, goodwill, and customer base

14   and would inevitably result in the destruction of the two ANNUAL SHOWS.

15   Accordingly, FHS seeks injunctive relief against all Defendants' for

16   misconduct.

17                    **TWENTY-THIRD CLAIM FOR RELIEF**

18            (Statutory Unfair Competition Under *California Business and*

19              *Professions Code § 17200* Against All Defendants)

20       206.   Plaintiff repeats, realleges and incorporates by reference the

21   allegations contained in paragraphs 1 through 205, inclusive, as though set

22   forth in full herein.

23       207.   Beginning at an exact date unknown to Plaintiff but at least as early

24   as October 2020, Defendants have committed acts of unfair competition as

25   defined by *California Business & Professions Code § 17200* by engaging in the

26   following unlawful practices:

27            a.      infringement of Plaintiff's unregistered marks in violation of

28   the federal Lanham Act, codified at *15 U.S.C. § 1125(a)*, in that the SERVICE

1   MARKS are distinctive, Plaintiff has had exclusive use of these SERVICE

2   MARKS for more than twenty-five (25) years, the SERVICE MARKS have

3   acquired a wide recognition with the consuming public thereby acquiring

4   secondary meaning notwithstanding said SERVICE MARKS not being

5   registered with the United States Patent and Trademark Office;

6          b.      advertising/false designation of origin in violation of

7   Lanham Act codified at *15 U.S.C. § 1125(a)*;

8          c.      infringement of Plaintiff's TRADE NAMES, which have

9   acquired secondary meaning, thereby violating the Lanham Act at *15 U.S.C. §*

10  *1125(a)*;

11         d.      diluting of Plaintiff's SERVICE MARKS and said

12  SERVICE MARKS are famous within the consuming public that attends boat

13  shows and exhibits at boat shows, thereby violating Lanham Act at *15 U.S.C. §*

14  *1125(c)*;

15         e.      infringement of SERVICE MARK registered under

16  *California Business & Professions Code* § 14320;

17         f.      common law service mark infringement;

18         g.      common law service mark misappropriation;

19         h.      common law conversion;

20         i.      conspiracy to commit of all these;

21                 1.      Tortious interference with contractual advantage;

22                 2.      Tortious interference with prospective economic

23                         advantage; and,

24                 3.      Disseminating deceptive advertising in violation of

25                         *California Business & Professions Code* §§ 17300 and

26                         17500.

27         208.   These acts and practices as described in paragraphs 1 through 207,

28  above, violate *California Business & Professions Code § 17200* in the

following aspects:

        a.      Defendants' illegal conduct constitutes numerous statutory violations including but not limited to *15 U.S.C. §1125(a); 15 U.S.C. § 1125(c)*; *California Business & Professions Code § 17500*; *California Business & Professions Code §§ 14320, 14400*; as well as various intentional torts for misappropriation, conversion, tortious interference with contractual relations, and tortious interference with prospective economic advantage.  Consequently, Defendants' violations of both statutory and common law constitutes unlawful business practices or acts within the meaning of *California Business & Professions Code § 17200.*

        b.      Defendants' practices and policies of violating *15 U.S.C. § 125(a); 15 U.S.C. § 1125(c)*; *California Business and  Professions Code § 17500*; *California Business & Professions Code §§ 14320, 14400*; as well as various intentional torts for misappropriation, conversion, tortious interference with contractual relations, and tortious interference with prospective economic advantage are likely to mislead the general public and, consequently, constitutes fraudulent business acts or practices within the meaning of *California Business & Professions Code § 17200.*

        c.      Defendants' acts and untrue and misleading advertising, as more fully set forth in paragraphs 1 through 207, above, are incorporated herein by reference and are by definition violations of *California Business & Professions Code § 17200.*

209.  Defendants have also engaged in unfair competition, which, if not unlawful, constitutes unfair business practices and in violation of *California Business and Professions Code § 17200* because:

        a.      Defendants knew that FHS or its predecessor in interest had produced the premier recreational, boating, fishing and camping equipment shows in Newport Harbor for the last 30 years, and the last 11 years at the

1    FACILITIES.  Defendants knew that FHS renewed or was trying to renew its

2    exclusive contract at the FACILITIES to house the two ANNUAL SHOWS.

3    Notwithstanding this knowledge, the Defendants engaged in previously

4    described conduct.

5        210.    The unlawful, fraudulent business practices and false and

6    misleading advertising of Defendants as described above, present a continuing

7    threat to FHS and to members of the public. If left unrestrained, Plaintiff will

8    suffer irreparable harm in the destruction of its business.  Consumers

9    (EXHIBITORS and ATTENDEES) will be misled in thinking that they are

10    acquiring services from Plaintiff when in fact they are acquiring services from

11    Defendants. There is also the likelihood that consumers will acquire services

12    which are of a lesser quality notwithstanding consumers' belief that they are

13    acquiring services from Plaintiff who has 30 years experience producing the

14    two ANNUAL SHOWS.

15        211.    As a direct and proximate result of the aforementioned acts,

16    Defendants received and continue to hold economic interests and intangible

17    property belonging to Plaintiff FHS and are improperly providing services to

18    consumers who believe they are receiving services from Plaintiff FHS.

19    Wherefore, Plaintiff FHS prays for relief as set forth hereunder, including but

20    not limited to the issuance of an injunction against all Defendants.

21        212.    In doing the things herein alleged, Defendants, and each of them,

22    acted willfully and with intent to cause injury to Plaintiff FHS. Defendants, and

23    each of them, were therefore guilty of malice and oppression in conscious

24    disregard of Plaintiff FHS' s rights, thereby warranting an assessment of

25    punitive damages in an amount appropriate to punish Defendants and deter

26    others from engaging in similar misconduct.

27    ///

28    ///

COMPLAINT

## TWENTY-FOURTH CLAIM FOR RELIEF

(Violations of *California Business & Professions Code* § 17500

Against All Defendants)

213.   Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 212, inclusive, as though set forth in full herein.

214.   Beginning at an exact date unknown to Plaintiff, but at least as early as December 2020, Defendants have committed acts of untrue and misleading advertising, as defined by *California Business & Professions Code* § 17500, by engaging in the acts and practices described in paragraphs 1 - 207 herein with intent to induce members of the public to enter into contracts for the purchase of services from Defendants related to exhibiting goods for sale at a boat show event which is confusingly similar to the two ANNUAL SHOWS owned and produced by Plaintiff.

215.   The acts of untrue and misleading advertising by Defendants described herein present a continuing threat to members of the public in that the public will be deceived in thinking that it is acquiring services from Defendants when in fact the consuming public (EXHIBITORS and ATTENDEES) will be under the belief that they are acquiring services from Plaintiff. Plaintiff and other members of the public have no other adequate remedy at law in that damages will not provide adequate compensation especially if FHS' s business, namely, the two ANNUAL SHOWS is ultimately destroyed by illegal activities and deceptive advertising activities of Defendants. Wherefore, Plaintiff prays for injunctive relief pursuant to *California Business & Professions Code §§ 17200* and *17500.*

///

///

///

COMPLAINT

# TWENTY-FIFTH CLAIM FOR RELIEF

(Violation of *California Uniform Trade Secret Act,*

*Cal. Civ. Code § 3426.1 et seq.* Against All Defendants)

216.   Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 215, inclusive, as though set forth in full herein.

217.   California's *Uniform Trade Secret Act* affords protections to any information that derives independent economic value and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. Thus, an employer may bring a claim for trade secret misappropriation if an employee is misappropriating any of the employer's valuable information that qualifies as a trade secret.

218.   As previously detailed herein above, Defendants individually and collectively, have misappropriated or have misappropriated or are currently in the act of misappropriating valuable information that qualifies as a trade secret belonging to FHS.

219.   FHS has been damaged in an amount that is unascertained at this time but which is anticipated to exceed $1 million, or an amount to be proven at trial.

220.   In doing the things herein alleged, Defendants, and each of them, acted willfully and with intent to cause injury to Plaintiff FHS. Defendants, and each of them, were therefore guilty of malice and oppression in conscious disregard of Plaintiff FHS' s rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct.

221.   Defendants threatened to, and unless restrained will, continue to engage in the wrongful and illegal acts described herein for which Plaintiff's will suffer great and irreparable injury, for which damages would not afford

adequate relief in that said damages would not adequately compensate for the injury to FHS and to FHS's business reputation, goodwill, and customer base and would inevitably result in the destruction of the two ANNUAL SHOWS. Accordingly, FHS seeks injunctive relief against all Defendants' for misconduct.

### TWENTY-SIXTH CLAIM FOR RELIEF

(Violation of Unfair Business Practices: *California Business & Professions Code § 17200-17301* Against All Defendants)

222.    Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 221, inclusive, as though set forth in full herein.

223.    As detailed herein above, Defendants have engaged in acts of unlawful, unfair and fraudulent business practices resulting in unfair competition by these employees and former employees who are the Defendants named herein.

224.    FHS is informed and believes and thereon alleges that it has been damaged in excess of $1 million, or an amount to be proven at trial.

225.    In doing the things herein alleged, Defendants, and each of them, acted willfully and with intent to cause injury to Plaintiff FHS. Defendants, and each of them, were therefore guilty of malice and oppression in conscious disregard of Plaintiff FHS' s rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct.

226.    Defendants threatened to, and unless restrained will, continue to engage in the wrongful and illegal acts described herein for which Plaintiff's will suffer great and irreparable injury, for which damages would not afford adequate relief in that said damages would not adequately compensate for the injury to FHS and to FHS's business reputation, goodwill, and customer base

and would inevitably result in the destruction of the two ANNUAL SHOWS. Accordingly, FHS seeks injunctive relief against all Defendants' for misconduct.

## PRAYER

**WHEREFORE**, Plaintiff FHS demands that judgment be entered against the Defendants as follows:

**ON THE FIRST CLAIM FOR RELIEF**

1.    General and Special damages to be proven at trial, to the extent allowed by law;

2.    Injunctive relief to the extent allowed by law;

3.    For attorney's fees and costs to the extent allowed by law;

4.    For punitive damages or enhanced damages to the extent allowed by law;

**ON THE SECOND CLAIM FOR RELIEF**

1.    General and Special damages to be proven at trial, to the extent allowed by law;

2.    Injunctive relief to the extent allowed by law;

3.    For attorney's fees and costs to the extent allowed by law;

4.    For punitive damages or enhanced damages to the extent allowed by law;

**ON THE THIRD CLAIM FOR RELIEF**

1.    General and Special damages to be proven at trial, to the extent allowed by law;

2.    Injunctive relief to the extent allowed by law;

3.    For attorney's fees and costs to the extent allowed by law;

4.    For punitive damages or enhanced damages to the extent allowed by law;

///

COMPLAINT

**ON THE FOURTH CLAIM FOR RELIEF**

1.    General and Special damages to be proven at trial, to the extent allowed by law;

2.    Injunctive relief to the extent allowed by law;

3.    For attorney's fees and costs to the extent allowed by law;

4.    For punitive damages or enhanced damages to the extent allowed by law;

**ON THE FIFTH CLAIM FOR RELIEF**

1.    General and Special damages to be proven at trial, to the extent allowed by law;

2.    Injunctive relief to the extent allowed by law;

3.    For attorney's fees and costs to the extent allowed by law;

4.    For punitive damages or enhanced damages to the extent allowed by law; **ON THE SIXTH CLAIM FOR RELIEF**

1.    General and Special damages to be proven at trial, to the extent allowed by law;

2.    Injunctive relief to the extent allowed by law;

3.    For attorney's fees and costs to the extent allowed by law;

4.    For punitive damages or enhanced damages to the extent allowed by law;

**ON THE SEVENTH CLAIM FOR RELIEF**

1.    General and Special damages to be proven at trial, to the extent allowed by law;

2.    Injunctive relief to the extent allowed by law;

3.    For attorney's fees and costs to the extent allowed by law;

4.    For punitive damages or enhanced damages to the extent allowed by law;

///

COMPLAINT

**ON THE EIGHTH CLAIM FOR RELIEF**

1.    General and Special damages to be proven at trial, to the extent allowed by law;

2.    Injunctive relief to the extent allowed by law;

3.    For attorney's fees and costs to the extent allowed by law;

4.    For punitive damages or enhanced damages to the extent allowed by law; **ON THE NINTH CLAIM FOR RELIEF**

1.    General and Special damages to be proven at trial, to the extent allowed by law;

2.    Injunctive relief to the extent allowed by law;

3.    For attorney's fees and costs to the extent allowed by law;

4.    For punitive damages or enhanced damages to the extent allowed by law;

**ON THE TENTH CLAIM FOR RELIEF**

1.    General and Special damages to be proven at trial, to the extent allowed by law;

2.    Injunctive relief to the extent allowed by law;

3.    For attorney's fees and costs to the extent allowed by law;

4.    For punitive damages or enhanced damages to the extent allowed by law;

**ON THE ELEVENTH CLAIM FOR RELIEF**

1.    General and Special damages to be proven at trial, to the extent allowed by law;

2.    Injunctive relief to the extent allowed by law;

3.    For attorney's fees and costs to the extent allowed by law;

4.    For punitive damages or enhanced damages to the extent allowed by law;

///

COMPLAINT

**ON THE TWELFTH CLAIM FOR RELIEF**

1.      General and Special damages to be proven at trial, to the extent allowed by law;

2.       Injunctive relief to the extent allowed by law;

3.      For attorney's fees and costs to the extent allowed by law;

4.      For punitive damages or enhanced damages to the extent allowed by law;

**ON THE THIRTEENTH CLAIM FOR RELIEF**

1.      General and Special damages to be proven at trial, to the extent allowed by law;

2.      Injunctive relief to the extent allowed by law;

3.      For attorney's fees and costs to the extent allowed by law;

4.      For punitive damages or enhanced damages to the extent allowed by law;

**ON THE FOURTEENTH CLAIM FOR RELIEF**

1.      General and Special damages to be proven at trial, to the extent allowed by law;

2.      Injunctive relief to the extent allowed by law;

3.      For attorney's fees and costs to the extent allowed by law;

4.      For punitive damages or enhanced damages to the extent allowed by law;

**ON THE FIFTEENTH CLAIM FOR RELIEF**

1.      General and Special damages to be proven at trial, to the extent allowed by law;

2.      Injunctive relief to the extent allowed by law;

3.      For attorney's fees and costs to the extent allowed by law;

4.      For punitive damages or enhanced damages to the extent allowed by law;

COMPLAINT

**ON THE SIXTEENTH CLAIM FOR RELIEF**

1. General and Special damages to be proven at trial, to the extent allowed by law;

2. Injunctive relief to the extent allowed by law;

3. For attorney's fees and costs to the extent allowed by law;

4. For punitive damages or enhanced damages to the extent allowed by law;

**ON THE SEVENTEENTH CLAIM FOR RELIEF**

1. General and Special damages to be proven at trial, to the extent allowed by law;

2. Injunctive relief to the extent allowed by law;

3. For attorney's fees and costs to the extent allowed by law;

4. For punitive damages or enhanced damages to the extent allowed by law;

**ON THE EIGHTEENTH CLAIM FOR RELIEF**

1. General and Special damages to be proven at trial, to the extent allowed by law;

2. Injunctive relief to the extent allowed by law;

3. For attorney's fees and costs to the extent allowed by law;

4. For punitive damages or enhanced damages to the extent allowed by law;

**ON THE NINETEENTH CLAIM FOR RELIEF**

1. General and Special damages to be proven at trial, to the extent allowed by law;

2. Injunctive relief to the extent allowed by law;

3. For attorney's fees and costs to the extent allowed by law;

4. For punitive damages or enhanced damages to the extent allowed by law;

COMPLAINT

1  **ON THE TWENTIETH CLAIM FOR RELIEF**

2      1.    General and Special damages to be proven at trial, to the extent

3  allowed by law;

4      2.    Injunctive relief to the extent allowed by law;

5      3.    For attorney's fees and costs to the extent allowed by law;

6      4.    For punitive damages or enhanced damages to the extent allowed by

7  law;

8  **ON THE TWENTY-FIRST CLAIM FOR RELIEF**

9      1.    General and Special damages to be proven at trial, to the

10  extent allowed by law;

11      2.    Injunctive relief  to the extent  allowed  by  law;

12      3.    For attorney's fees and costs to the extent allowed  by  law;

13      4.    For punitive damages or enhanced damages to the extent

14  allowed by law;

15  **ON THE TWENTY-SECOND CLAIM FOR RELIEF**

16      1.    General and Special damages to be proven at trial, to the extent

17  allowed by law;

18      2.    Injunctive relief to the extent allowed by law;

19      3.    For attorney's fees and costs to the extent allowed by law;

20      4.    For punitive damages or enhanced damages to the extent allowed by

21  law;

22  **ON THE TWENTY-THIRD CLAIM FOR RELIEF**

23      1.    General and Special damages to be proven at trial, to the extent

24  allowed by law;

25      2.    Injunctive relief to the extent allowed by law;

26      3.    For attorney's fees and costs to the extent allowed by law;

27      4.    For punitive damages or enhanced damages to the extent

28  allowed by law;

COMPLAINT

**ON THE TWENTY-FOURTH CLAIM FOR RELIEF**

1.     General and Special damages to be proven at trial, to the extent allowed by law;

2.     Injunctive relief to the extent allowed by law;

3.     For attorney's fees and costs to the extent allowed by law;

4.     For punitive damages or enhanced damages to the extent allowed by law.

**ON THE TWENTY-FIFTH CLAIM FOR RELIEF**

1.     General and Special damages to be proven at trial, to the extent allowed by law;

2.     Injunctive relief to the extent allowed by law;

3.     For attorney's fees and costs to the extent allowed by law;

4.     For punitive damages or enhanced damages to the extent allowed by law;

**ON THE TWENTY-SIXTH CLAIM FOR RELIEF**

1.     General and Special damages to be proven at trial, to the extent allowed by law;

2.     Injunctive relief to the extent allowed by law;

3.     For attorney's fees and costs to the extent allowed by law;

4.     For punitive damages or enhanced damages to the extent allowed by law.

**ON ALL CAUSES OF ACTION**

1.     That the Defendants, their officers, agents, servants, and employees, and all persons in concert or participation with the Defendants be preliminarily and permanently enjoined from:

a.     infringing Plaintiff FHS's registered SERVICE MARKS;

b.     infringing Plaintiff FHS's registered SERVICE MARKS;

infringing Plaintiff FHS's unregistered SERVICE MARKS which have become

distinctive in the public's mind and cause the public to associate Plaintiff FHS's events and the two ANNUAL SHOWS with the SERVICE MARKS;

       c.   infringing Plaintiff FHS's unregistered TRADE NAMES which have become distinctive in the public's mind and cause the public to associate Plaintiff FHS's events and the two ANNUAL SHOWS with the TRADE NAMES;

       d.   selling or marketing services in any way that tends to deceive, mislead, or confuse the public into believing that the Defendants' service is in any way sanctioned by or affiliated with Plaintiff FHS's two ANNUAL SHOWS, including enjoining Defendants from holding any events whatsoever;

       e.   diluting the distinctive quality of FHS's SERVICE MARKS, TRADE NAMES, TRADE DRESS and the two ANNUAL SHOWS;

       f.   otherwise competing unfairly with Plaintiff FHS or the two ANNUAL SHOWS.

2.   That the Defendants, their officers, agents, servants, and employees, and all persons in concert or participation with the Defendants be directed to favorably promote the 2021 and 2022 two ANNUAL SHOWS being produced by Plaintiff.

3.   That the Defendants be directed to file with this Court and serve on the Plaintiff within thirty (30) days after service of the injunction, a report in writing, under oath, setting forth in detail the manner and form in which the Defendants have complied with the injunction.

4.   That the Defendants be required to account for and pay over to Plaintiff FHS any and all revenues obtained from their illegal activities described herein above.

5.   That the Defendants be required to pay to Plaintiff FHS such damages as Plaintiff FHS has sustained as a consequence of the Defendants' acts of service mark counterfeiting, service mark infringement, false

COMPLAINT

advertising, service mark dilution, unfair competition, deceptive and unfair practices, including multiple damages in the amount of three times the damages sustained by Plaintiff FHS, pursuant to Section 35 of the Lanham Act, *15 U.S.C. § 1117*.

6.    That the Defendants be required to deliver up for destruction all products, packaging, labels, literature, advertising, and other material bearing copies, imitations, or reproductions, including confusingly similar variations of, the SERVICE MARKS, TRADE NAMES, or TRADE DRESS.

7.    That the Defendants be required to pay Plaintiff FHS costs, expenses, and reasonable attorney fees in connection with this action, as provided in *15 U.S.C. § 505* and *15 U.S.C. § 1117*, and *California Business & Professions Code 14200 et. seq*.

8.    That Plaintiff FHS have such other and further relief as this Court deems just and proper.

DATED:    March 4, 2021          TROPE LAW GROUP, P.C.


                                 _____
                                 KONRAD L. TROPE,
                                 ATTORNEYS FOR PLAINTIFF


## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by a jury in the above-entitled action.

DATED:    March 4, 2021          TROPE LAW GROUP, P.C.


                                 _____
                                 KONRAD L. TROPE,
                                 ATTORNEYS FOR PLAINTIFF